# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:24-mj-34-1 |
| PATRICK KNAUSS | |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The United States of America, by and through its attorney, Nikolas P. Kerest, United States Attorney for the District of Vermont, hereby moves for pretrial detention of the above-named defendant pursuant to 18 U.S.C. § 3142(e) and (f).

1. <u>Eligibility for Detention</u>. This defendant is eligible for detention because the case involves offenses of: conspiracy to manufacture child pornography, in violation of 18 U.S.C. § 2251(a); conspiracy to receive and distribute child pornography, in violation of 18 U.S.C. § 2252(a)(2); and receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). As a result, there is a rebuttable presumption, <u>see</u> 18 U.S.C. § 3142(e)(3)(E), and a serious risk that defendant will flee, <u>see</u> 18 U.S.C. § 3142(f)(2)(A).

As outlined in greater detail below, defendant and his co-conspirators, Andrew Wolf and Kray Strange,[1] operated an elaborate online child exploitation catfishing scheme to entice minor

---

[1] Notably, before the defendant was identified as a participant in this scheme, his co-conspirators were charged in a separate indictment with conspiracy to manufacture child pornography and related offenses in EDPA Criminal No. 22-35-MAK, *United States v. Andrew Wolf, et al*. Both co-conspirators were ordered detained pending trial after their initial appearances in EDPA. Both ultimately entered open guilty pleas to the Indictment. In 2023, Wolf was sentenced to terms of 466 months' imprisonment (nearly 39 years), and Strange was sentenced to 33 years' imprisonment.

1

boys to self-produce sexually explicit images and send them to the defendants over the Internet. At the time, Wolf was in his eighteenth year as a middle school teacher at a private school in Philadelphia, and Strange was a young adult living in Carthage, New York. Together, the three targeted boys with large social media followings, such as Little League World Series players and child Tik Tok stars, as well as dozens of Wolf's own boy middle school students. Throughout their years of communications (which amount to nearly 2,000 pages), on a near daily basis, the defendant and his co-conspirators also discussed their shared sexual interest in children and traded images and videos of child sexual abuse material (CSAM).

From as early as August 11, 2019 through the federal arrest of co-conspirator Andrew Wolf in EDPA on October 7, 2021, the defendant and his co-conspirators carried out their child exploitation catfishing scheme and traded child sexual abuse material depicting the children they successfully victimized, as well as other videos and images depicting children engaged in sexually explicit conduct and being sexually abused by adults.

The evidence of the conspiracy includes nearly 10,000 Telegram messages over approximately 2,000 pages, which were extracted from Wolf's cell phone pursuant to a federal search warrant. During these communications, the parties exchanged over 1,000 image/video files.[2] On Telegram, the defendant used the name "PK." Throughout his communications with Wolf, PK shared specific details pertaining to his geographic location (Vermont), age and birth month (March 1989), and employment (a ski resort where Knauss told Wolf he occasionally

---

[2] Due to the files being extracted from Wolf's device in airplane mode (rather than connecting to the Internet and risking destruction of evidence by another Telegram user having already deleted the messages), law enforcement can only view the content of a small portion of these files. The others display as "empty" files.

snuck into guests' rooms to snoop and "sample" boys' underwear). All of these details were confirmed to be accurate through investigation. PK also shared the name of his Instagram account (zoey_madame) with Wolf via Telegram. Through investigation, FBI Philadelphia determined that the Instagram account was subscribed to the defendant's phone number and regular email address. In a May 2023 interview with investigators from the Vermont Attorney General's Office, the defendant ultimately admitted to operating these accounts.

The defendant and Wolf began communicating about their shared sexual interest in minor boys even earlier than their Telegram communications when, in 2018, the defendant contacted Wolf via email as a "fan" of Wolf's erotic pedophile fiction — short stories that often portrayed adult men raping minor boys that Wolf published on a website called "Nifty." The defendant signed his full name to these emails. After exchanging "fan-mail," the defendant and Wolf began communicating on the encrypted platform Telegram.

Eventually, Wolf introduced the defendant to co-conspirator Kray Strange on Telegram. Strange was reputed to be a prolific "baiter" of minor boys and victimized hundreds of minor boys by impersonating a minor girl on Snapchat and Instagram to entice the boys to self-produce child pornography and send the images to him. After Wolf introduced the defendant to Strange, the three of them participated in a group chat, in which they traded child pornography, provided social media handles and other identifying information for minor boys for Strange to target, and discussed Strange's efforts, including the defendant and Wolf providing instructions about what kinds of videos and images to entice the boys to self-produce. Throughout their communications, the defendant provided **more than 100** URLs of social media accounts belonging to boys who appear to be minors for Strange to attempt to victimize, and the defendant

repeatedly asked for updates about Strange's progress. Strange also occasionally baited their victims in real time while also communicating with the defendant and Wolf on Telegram about what was happening in his separate communications with the minor.

The following exchange from September 22, 2021 is just one example taken from thousands of pages of Telegram messages of a similar nature of how the defendant and his co-conspirators carried out their scheme:

    Strange: [Sends 18-second-long video of a minor boy removing his shirt and posing in a manner to display his penis]

    **Defendant: Who dat**

    Strange: [Minor boy's first name]

    **Defendant: Who haha**

    Strange: He's just a boy

    **Defendant: Ohhh**
    **Hes cute from what I can see**

    Wolf: [Minor boy's first name] (devil smiley emoji)

    **Defendant: What else did [minor boy's first name] show you**

    Strange: This is rn [right now]

    Strange: [Sends 8-second-long video depicting a close-up of a minor inserting a finger into his anus. Towards the end of the video, the camera angle moves up to expose the minor's penis.]

    **Defendant: How old is he?**

    Strange: He tells me 14 but he's in seventh grade and just celebrated his 13th birthday

    **Defendant: Ah**

|            | **Any siblings?**[3]                                                                                                                                 |
|------------|------------------------------------------------------------------------------------------------------------------------------------------------------|
| Strange:   | [Sends image file, now "empty"] <br> [Sends image of a nude minor boy with his penis expose while laying on a bed]                                   |
| Strange:   | Sisters                                                                                                                                              |
| **Defendant:** | **His ass is nice and tight**                                                                                                                    |
| Strange:   | Ya                                                                                                                                                   |
| **Defendant:** | **Love that belly button, hed be fun to play with** <br> **Should get him in his sisters panties**                                               |
| Strange:   | His sister is an infant lol                                                                                                                          |
| **Defendant:** | **Oh** <br> **Well how was I supposed to know**                                                                                                   |
| Strange:   | [Sends a 7-second-long video depicting a close-up of a minor's penis while he masturbates and ejaculates on himself while laying on a bed]          |
| **Defendant:** | **What a waste of a shot, all over his bed instead of him… damn nice load Though**                                                                |
| Strange:   | Agreed                                                                                                                                               |
|            | …                                                                                                                                                    |
| Strange:   | [Sends 4-second-long video of a minor boy stepping out of his underwear and displaying his penis]                                                    |
| **Defendant:** | **He needs to show his face soon** <br> **I bet his cum face is amazing**                                                                         |

---

[3] One of the group's goals included enticing minor boys to act out sexually with their own brothers and minor friends. On one occasion, Strange enticed two 14-year-old boys (both of whom are identified minor victims who live in EDPA) to record themselves performing oral sex on each other and shared the videos with Wolf via Telegram. On another occasion, Wolf and Strange encouraged another identified 15-year-old minor victim to record himself touching his sleeping 10-year-old brother with his penis.

5

| | | |
|---|---|---|
| Strange: | | Ik |
| | | [Sends 3-second-long video of a nude minor boy in what appears to be a bedroom, exposing his face and penis to the camera] |
| **Defendant:** | | **Oh damn** |
| | | **Plead tell me hes got more** |

The defendant also requested specific types of child sexual abuse material from Wolf and Strange and had a particular interest in children being violently abused.  For example, the defendant made the following requests:

- Any rape or bondage shit?
- Got any forced stuff?
- I'd love to find a good long abuse vi
- I need some BDSM boys
- I need more boy bondage
- You know of any good forced vids or piss

The context of the messages indicates that Wolf and Strange distributed files consistent with these descriptions to the group.  In addition to the files described above, the video and image files where content is viewable include a nearly 13-minute-long video of a minor boy masturbating and penetrating himself with a stick, and other images of minor boys masturbating and inserting their fingers into their anuses.

The defendant also discussed his own efforts to "bait" minor boys by impersonating a girl online with his co-conspirators.  For example, on August 14, 2019, the defendant sent multiple image files (now appearing as "empty files") to Wolf, which the defendant told Wolf depicted his own 16-year-old cousin, whom he claimed he baited via a fake Instagram account, which enabled him to see his minor cousin "cum and play with his ass."

On May 4, 2023, pursuant to a state search warrant, Vermont law enforcement seized the defendant's cell phone and computer from the apartment where he lived alone.  The defendant's

cell phone contained at least 17 unique, cached images of child pornography, including images that appear identical to images and videos Strange distributed during the exchange outlined above, as well as other images that appear identical to files that Strange and Wolf distributed in the Telegram group. The defendant's phone also contained cached images (not CSAM) depicting some of Wolf's identified middle school students. The defendant's laptop also contained evidence of CSAM in cached space. Notably, the laptop also contained evidence of Kik communications dating back to 2014, in which the defendant appears to be impersonating a minor girl talking to boys about sexually explicit topics.

The defendant is charged for his role in these offenses in an Indictment issued by a federal grand jury sitting in the Eastern District of Pennsylvania (EDPA), where the defendant has no community ties. The defendant faces a statutory maximum of 70 years' imprisonment, a mandatory minimum sentence of 15 years' imprisonment, and sentencing guidelines that call for life imprisonment. The defendant has never served any time in prison and his lack of community ties to EDPA significantly increases his risk of flight in the face of his potential sentence. For all of these reasons, and the reasons outlined below, the defendant is unable to rebut the statutory presumption that no combination of conditions will assure his appearance for trial or the safety of the community, and he should be detained.

2. <u>Reason for Detention</u>. The Court should detain the defendant because there are no conditions of release that will reasonably assure the safety of any other person and the community or the defendant's appearance as required. <u>See</u> 18 U.S.C. § 3142(g).

As outlined above in section 1 and incorporated herein by reference, the nature and circumstances of the offenses charged are serious as they involve minor victims and the weight

of the evidence against the defendant is substantial. See 18 U.S.C. § 3142(g)(1), (2). The defendant faces a maximum penalty of 70 years' imprisonment with a mandatory minimum term of 15 years, a minimum 5 years up to a lifetime of supervised release, along with various financial penalties and assessments. The defendant's estimated sentencing guideline range calls for a life sentence, significantly higher than the mandatory minimum 15 years' imprisonment. The defendant has never before served a prison sentence and lacks ties to the EDPA where he is charged.

The history and characteristic of the defendant support detention. See 18 U.S.C. § 3142(g)(3)(A). The defendant has no ties to the Eastern District of Pennsylvania. The location of the Court in EDPA where the defendant will be required to appear is approximately 400 miles away from his residence and over 7 hours by car through several states. The defendant's lack of community ties to EDPA, where he is charged with very serious crimes, significantly increases his risk of flight should he be released pending trial. As discussed above, the defendant also engaged in deceitful online activity from at least as early as 2014 by misrepresenting his identity as a minor teenage girl in various social media applications, rather than the adult man that he is, and by assisting other sex offenders to do the same, in a clear attempt to gain access to more minor boys to victimize.

The Court should detain the defendant because he has violated conditions of release in his Vermont state prosecution. See 18 U.S.C. § 3142(g)(3)(B). The defendant was arrested and charged with possession of child pornography in the state of Vermont after Vermont law enforcement investigated a lead out of FBI Philadelphia based on the evidence described above. The defendant was released on conditions in that case, one of which includes that the defendant

should only access the Internet in public places for work, paying bills, and mental health. Prior to the defendant's federal arrest on March 12, 2024, FBI located him through his use of a Facebook account at his current home address (which was not the address on file with the state prosecutor's office). On May 9, 2023, Vermont Superior Court Judge John Pacht placed the defendant on conditions of release in Case No. 23-CR-04366. Those conditions included, among others:

| Condition 33 | You shall not access the internet. |
|---|---|
| Condition 34 | You shall not possess or use any device that allows access to the internet to the extent that you would be able to access websites, social media accounts, search engines, email, messaging apps, multimedia, or pornographic materials including, but not limited to, computers, smart phones, gaming consoles, or handheld gaming devices. |

| Condition 37 | Exceptions to Conditions 33 and 34: in public portals such as libraries and your place of employment, and only for purposes for work, paying bills, and mental health concerns. |
|---|---|

FaceBook records in response to an administrative subpoena showed that the defendant had logged into his FaceBook account in August 2023 and did not logout from it until February 2024. Nothing indicates that the defendant's access of his FaceBook account via the internet was for purposes allowed by Condition 37.

The nature and seriousness of the danger to other people and the community posed by the defendant's release are considerable. See 18 U.S.C. § 3142(g)(4). Pursuant to 18 U.S.C. § 3142(e)(3)(E), there is a rebuttable presumption in favor of detention for individuals who, like this defendant, are charged with violating 18 U.S.C. § 2251(a). This presumption is based in part on the Congressional determination that "sex offenders and child molesters are four times more likely than other violent criminals to recommit their crimes." *Comments of Chairman Lemar Smith*, H.R. Rep. 5422; *See also United States v. Farris*, 2008 WL 1944131 (W.D. Pa. 2008).

The dangers surrounding these types of offenses are widely recognized. *See McKune v. Lile*, 536 U.S. 24, 33 (2002) (emphasizing Department of Justice and Federal Bureau of Investigation statistics reflecting substantially increased likelihood of repeat arrests for sex offenders); *United States v. Pugh*, 515 F.3d 1179, 1199 (11th Cir.2008) (discussing influence of sexual offender recidivism in passage of various provisions in the PROTECT Act); *Report of Chairman Sensenbrenner*, H.R. Rep. 107-527, on amendment of 18 U.S.C. § 3583 (expressing congressional determination that "sex offenders and child molesters are four times more likely than other violent criminals to recommit their crimes" and referencing studies and findings documenting (1) a significantly higher rate of recidivism among sexual predators, (2) the number of undetected offenses which such individuals actually commit and (3) the psychological impact such offenses have on the victims); *Doe v. Bredesen*, 507 F.3d 998, 1006 (6th Cir.2007) (noting the legislative findings in numerous states passing sex offender registration systems reflecting the "undisputed high risk of recidivism" by such sex offenders). A defendant may rebut the presumption of pretrial detention by presenting "some credible evidence" that he will not pose a threat to the community upon her release. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir.1986).

The defendant poses a clear danger to children in the community, and there is no condition or combination of conditions that could assure the safety of the community if he is released. Even a condition that prohibits the defendant from having contact with minor children would not adequately assure the safety of children in the community if the defendant is released because there is no way to effectively monitor his compliance with such a condition. Only a 24-

hour watch by the Bureau of Prisons can ensure the safety of the community and children, in particular, from the defendant.

Furthermore, as demonstrated by the defendant's conduct to date in violation of Judge Pacht's conditions of release, there is no way to effectively monitor this defendant's online access to children and other sexual predators, for the following reasons:

(1) Access to the internet is possible through desktop and laptop computers, cell phones, iPods, iPads, and even gaming devices. There is no way to prevent the defendant from purchasing or using an Internet accessible device without the knowledge of Pretrial Services.

(2) Storage devices can range in size, down to the size of a postage stamp, making it impossible for a Pretrial Services officer to locate. There is no way to prevent the defendant from obtaining any storage medium, and no amount of supervision that would detect it in his home or elsewhere.

(3) There is no way to monitor whether the defendant will access the Internet – and child pornography and/or communication with minors about sexual activity – using a public library's computers, using family members' or friends' electronic equipment, or Internet access at any other location, given that there is free WiFi access from any number of public places.

(4) Even if this Court were to order that computer monitoring software be installed on the defendant's home computer(s), there would be no way to detect if he were to subvert the computer monitoring software by simply inserting a device with its own operating system into the computer being monitored, thereby bypassing the monitoring software altogether. The defendant's activities would be completely undetected, and the Pretrial Services officer – and this Court – would instead be issued a report that the defendant is in "compliance."

It is difficult to conceive of any supervision that would detect the defendant's criminal activities. And, in fact, FBI effectuated the federal arrest by tracking the defendant's use of a Facebook account that he was not permitted to access per his state release conditions. Pre-Trial Services is limited to inspection of items that are in plain view of the officers. Nor is Pretrial Services permitted to seize electronic evidence. The fact that the defendant has no ties to EDPA

11

further hinders the ability of Pretrial to supervise him because he would likely be supervised outside the District in which he is charged. "The ubiquitous presence of the internet and the all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion." *United States v. Schenberger*, 498 F.Supp.2d 738, 745 (D. N.J. 2007) ("This Court is not persuaded that meaningful assurances can be given that defendant's access to the internet can be stopped. Even if the defendant could somehow be prohibited from creating, viewing, or exchanging images of child pornography, it is difficult to conceive of measures that could confidently assure that defendant would not communicate with others and encourage the distribution of child pornography and related illicit activities."); *see also United States v. Voelker*, 489 F.3d 139, 145 (3d Cir.2007) (finding detention appropriate for a defendant charged with distributing and receiving child pornography, based on the dangers associated with child pornography offenses and the difficulty to effectively monitor understanding the accessibility of the Internet). Accordingly, the Government requests that the defendant remain in custody pending trial.

The defendant poses a clear danger to children in the community, and there is no condition or combination of conditions that could assure the safety of the community if he is released. The defendant has victimized hundreds of children via the Internet. Through his involvement in the conspiracy outlined above, he has already demonstrated that he is willing to engage in deceit to get what he wants— access to boys – which suggests he would be even more difficult to monitor on pretrial release. He has already violated at least one condition of his state pretrial release, where the stakes are much lower than the federal sentence of at least 15 years that the defendant now faces as a result of this Indictment. There is simply no way to adequately

monitor this defendant should he be released, nor any way to ensure compliance with any conditions this Court may impose, to eradicate the danger he poses to children in the community. Only a 24-hour watch provided by the Bureau of Prisons will ensure that the defendant does not endanger the public.

Moreover, prison is a certainty for this defendant if convicted of these crimes– he faces a mandatory minimum of 15 years' imprisonment, and sentencing Guidelines call for an even higher sentence of life imprisonment. The anticipation of this severe sentence gives the defendant every incentive to flee, knowing that he will spend a significant period of time in prison. The defendant's lack of ties to the Eastern District of Pennsylvania significantly increases his risk of flight. In addition, the prospect of this lengthy prison sentence makes him even more of a danger to children in the community, knowing that his release on bail may be the last time he is free in many years, if ever.

3. <u>Rebuttable Presumption</u>. The United States will invoke the rebuttable presumption against the defendant under § 3142(e)(3)(E). The rebuttable presumption applies because the case involves offenses of: conspiracy to manufacture child pornography, in violation of 18 U.S.C. § 2251(a); conspiracy to receive and distribute child pornography, in violation of 18 U.S.C. § 2252(a)(2); and receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2).

4. <u>Time for Detention Hearing</u>. The United States respectfully requests that the Court conduct the detention hearing upon completion of the pretrial services report, unless the defendant elects to consent temporarily to detention in this District, subject to detention hearing in EDPA. <u>See</u> Fed. R. Crim. P. 5.1(b).

5. <u>Other Matters</u>.  For all of the foregoing reasons, this Court should detain the defendant because he cannot rebut the presumption under 18 U.S.C. § 3142(f)(1)(E) that no condition or combination of conditions will reasonably assure his presence for trial or the safety of the community.

WHEREFORE, the government respectfully requests the Court detain this defendant prior to trial.

Dated at Burlington, Vermont on this 12th day of March 2024

Sincerely,

NIKOLAS P. KEREST
United States Attorney

By: */s/ Colin Owyang*
COLIN OWYANG
Assistant U.S. Attorney